599 F.2d 663
 101 L.R.R.M. (BNA) 2956, 86 Lab.Cas. P 11,439
 SABINE TOWING & TRANSPORTATION COMPANY, INC.,
Petitioner-Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent-Cross-Petitioner.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
SABINE TOWING & TRANSPORTATION CO., INC., Respondent.
 Nos. 77-1261, 77-2540.
 United States Court of Appeals,
Fifth Circuit.
 July 27, 1979.
 
 John H. Smither, William A. Jones, Jr., Houston, Tex., for Sabine Towing & Transp. Co., Inc. in both cases.
 Lynne E. Deitch, Atty., N. L. R. B., Washington, D. C., Elliott Moore, Dep. Assoc., Gen. Counsel, N. L. R. B., Washington, D. C., for N. L. R. B. in both cases.
 Benjamin Schlesinger, Michael S. London, New York City, for Seafarers Union in both cases.
 Petition for Review and Cross Application for Enforcement of an Order of the National Labor Relations Board.
 Application for Enforcement of an Order of the National Labor Relations Board.
 Before TJOFLAT and HILL, Circuit Judges, and HIGGINBOTHAM,* District Judge.
 TJOFLAT, Circuit Judge:
 
 
 1
 This consolidated appeal features the petition of Sabine Towing & Transportation Co., Inc. (Sabine) for review of one aspect of a decision of the National Labor Relations Board (the Board) in Case No. 77-1261, 205 NLRB 423 (1973), and the petition of the Board for enforcement of its entire order in that case and its order in Case No. 77-2540, 224 NLRB 941 (1976). The Board found Sabine in violation of sections 8(a)(1), 8(a)(3), and 8(a)(4) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3), (4) (1976), in a number of ways. Because its findings are clearly supported by substantial evidence, we enforce without further discussion the Board's entire order in Case No. 77-2540 and all but one aspect of its order in Case No. 77-1261. In the latter case, the Board misallocated the burden of proof in attempting to balance the property rights of Sabine against the organizational rights of non-Sabine-employee organizers from Seafarers International Union of North America, Atlantic, Gulf, Lakes and Inland Waters District (SIU) to carry out activities on Sabine's property. In so doing, the Board found that Sabine denied SIU organizers access to employees on Sabine's property and, accordingly, violated section 8(a)(1) of the Act. Had the Board charged SIU with the burden of proving nonaccess, as an intervening Supreme Court decision mandates, it would have been required to find for Sabine on the issue. We do so now and deny enforcement to the pertinent portion of the Board's order in Case No. 77-1261.
 
 
 2
 * Sabine operates a small fleet of ocean-going oil tankers which ply the coastal waters of the United States. Since 1947, Sabine's unlicensed seaman employees have been represented by the Sabine Independent Seamen's Association (SISA). In 1967, both SIU and the National Maritime Union (NMU) petitioned the Board for a representation election, which was won by SISA. In April 1971, SIU petitioned for another election; SIU, SISA and NMU all appeared on the ballot. After the election petition was filed, SIU requested that Sabine allow its organizers, none of whom were Sabine employees, to board Sabine's vessels in order to campaign among the unlicensed seamen, who resided on Sabine's tankers. Sabine refused SIU's request.
 
 
 3
 After the June 1971 election, which was won by SISA, SIU filed charges against Sabine for, among other things, denying its organizers access to the tankers. Following a lengthy hearing, the Administrative Law Judge (ALJ) held that the General Counsel had failed to meet his burden of proving that Sabine's denial of access had deprived SIU organizers of a reasonable opportunity to communicate their message to Sabine crewmen. The Board reversed, holding that Sabine, not the General Counsel, bore the burden of proof in this case I. e., Sabine had to show that SIU organizers had a reasonable opportunity to convey their campaign to Sabine employees; it was not the General Counsel's obligation to establish that the denial of access prevented SIU from communicating its organizational message. As the Board conceded in oral argument, if the burden of proof was improperly placed with the employer, its decision cannot stand.
 
 II
 
 4
 The genesis of this case is NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956), where the Supreme Court discussed employer property rights as compared with the right of nonemployees engaged in organizational activities to have access to the employer's property. The Babcock & Wilcox Court held that:
 
 
 5
 (A)n employer may validly post his property against nonemployee distribution of union literature if reasonable efforts by the union through other available channels of communication will enable it to reach the employees with its message and if the employer's notice or order does not discriminate against the union by allowing other distribution. . . .
 
 
 6
 . . . (W)hen the inaccessibility of employees makes ineffective the reasonable attempts by nonemployees to communicate with them through the usual channels, the right to exclude from property has been required to yield to the extent needed to permit communication of information on the right to organize.. . . (I)f the location of a plant and the living quarters of the employees place the employees beyond the reach of reasonable union efforts to communicate with them, the employer must allow the union to approach his employees on his property.
 
 
 7
 Id. at 112-13, 76 S.Ct. at 684-85. The mere fact that Sabine's employees resided on its tankers during their tours of duty operated, in the Board's view, to shift the burden of proof to Sabine to establish that SIU had a meaningful opportunity to pursue its organizational goals. The Board evidently read Babcock & Wilcox to require the imposition of this burden on the employer. We see nothing in the opinion in that case, however, that allocates the burden of proof in this way. We think the Board not only misread Babcock & Wilcox but, also, erred in fixing the burden of showing access on the employer.
 
 
 8
 The Board held that, under this Supreme Court precedent, Sabine could not justify its denial of access to its vessels unless it showed that other adequate methods of communication were available to the union. As the Supreme Court recently observed in Sears, Roebuck & Co. v. San Diego County District Council of Carpenters, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), however,
 
 
 9
 While Babcock indicates that an employer may not always bar nonemployee union organizers from his property, his right to do so remains the general rule. To gain access, the union has the burden of showing that no other reasonable means of communicating its organizational message to the employees exists or that the employer's access rules discriminate against union solicitation. That The burden imposed on the Union is a heavy one is evidenced by the fact that the balance struck by the Board and the courts under the Babcock accommodation principle has rarely been in favor of trespassory organizational activity.
 
 
 10
 Id. at 205, 98 S.Ct. at 1762 (footnotes omitted) (emphasis added). This unambiguous statement by the Supreme Court allocates the burden of proof in this case; the union assumes the risk of nonpersuasion. The fact that Sabine employees were on ships did not relieve SIU of the duty of demonstrating that it lacked alternative means of access.
 
 
 11
 The ALJ noted considerable evidence that SIU organizers were able effectively to contact Sabine seamen and convey their organizational message. Although on-duty Sabine employees did reside aboard ship, they went ashore during the frequent occasions when the tankers were in port (about eight times per month for seventeen to thirty-five hours at a time). SIU was able to contact the seamen when they passed through the docks and gates, meet with them in taverns and restaurants, reach them at their homes (Sabine provided SIU with Excelsior lists approximately one month prior to the election), and send campaign literature onto the tankers. Fifty-two Sabine crewmen testified before the ALJ that they Were approached by SIU. Two SIU organizers conceded on cross-examination that they approached a number of Sabine employees. The ALJ observed that at least thirteen other SIU organizers had contacted Sabine crewmen; these organizers were not called by the General Counsel to help rebut the evidence indicating that SIU had adequate means of communicating with the seamen. As the ALJ correctly concluded, in the face of substantial unrebutted evidence that the SIU had a reasonable opportunity to convey its message, and did so, he could only hold that the General Counsel had "failed to meet (his) burden of proving ineffective the attempts to contact and discuss the campaign issues with the crewmen at the gates or docks, at the bars and taverns, while providing them transportation, or in telephone conversations or home visits during the critical period." Case No. 77-1261 Record, vol. IV, at 2739, Reprinted at 205 NLRB 431. This is clearly not one of the rare situations where nonemployee access to an employer's property is required by Babcock & Wilcox. See Sears, Roebuck & Co. v. San Diego County District Council of Carpenters, 436 U.S. at 180, 98 S.Ct. at 1745.
 
 
 12
 Considerations such as an employer's alleged antiunion animus, to which the Board has pointed in this case, have no role in the allocation of the burden of proof and thus are irrelevant to the determination of SIU's denial of access claim against Sabine. Before the Board can order an employer to allow nonemployee union organizers to use its property, the General Counsel must prove that union efforts to communicate with employees through usual channels are ineffective. When the General Counsel fails to meet this burden, an access order will not stand.
 
 III
 
 13
 For the reasons set forth above, enforcement of the Board's order in Case No. 77-1261 is granted in part and denied in part. Its order in Case No. 77-2540 is enforced in full.
 
 
 14
 ENFORCEMENT GRANTED IN PART AND DENIED IN PART.
 
 
 
 *
 District Judge of the Northern District of Texas, sitting by designation